UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LEONITUS JABIR BEY,                           C.A. NO.: 19-cv-10219PBS

      Plaintiff,

v.

DAVID PENDER,
      Defendant

**DEFENDANT DAVID PENDER'S
MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION FOR SUMMARY JUDGMENT**

**I.  STATEMENT OF THE CASE**

This is an action brought by a *pro se* plaintiff. Although difficult to glean from the complaint, it appears that the claims are for the following: a claim for *Genocide* pursuant to 18 U.S.C § 1091(e), a violation of the Massachusetts Declaration of Rights, unlawful arrest, assault and battery, and a violation of the Fifth Amendment of the United States Constitution. 42 U.S.C. § 1983 was not pled.

**II.  SUMMARY OF THE FACTS**

The detailed facts are contained in the defendant's Concise Statement of Material Facts of Record as to Which the Moving Party Contends There Is No Genuine Issue to be Tried pursuant to Local Rule 56.1, filed with this motion.

On January 22, 2019, David Pender a police officer for the City of Lowell observed the *pro se* plaintiff Leonitus Jabir Bey aka Leon Campbell ("Bey") operating a vehicle and committing motor vehicle violations. The defendant attempted to stop Bey by pursuing him with lights flashing but Bey admittedly did not stop. He proceeded along and continued to violate motor vehicle laws until he arrived at his house.

1

The defendant contends that the plaintiff refused to get out of the car despite numerous commands.  A struggle ensued after the *pro se* plaintiff knocked the defendant's taser from the defendant's hand.  Mr. Bey was arrested and charged with a number of offenses: carrying a dangerous weapon pursuant to M.G.L. c. 269, §10, negligent operation of a motor vehicle pursuant to M.G.L. c. 90, § 24(2)(a), unlicensed operation of a motor vehicle c. 90, § 10, providing false information to law enforcement pursuant to c. 268, § 34A, resisting arrest pursuant to M.G.L. c. 268. § 32B, failing to stop for a police officer pursuant to c. 90, § 25, a marked lane violation pursuant to c. 89, § 4A, operating an unregistered motor vehicle pursuant to c. 90, § 9, and a passing violation pursuant to M.G.L. c. 89. § 2.  (Exhibit 1 - Criminal Complaint of the Lowell District Court attached to Plaintiff's Complaint, Document 1-1, p. 21-24.

After a jury trial at Lowell District Court on September 3-September 4, 2019, the verdict and findings on the charges were as follows:  resisting arrest – guilty – sentenced to six months in the house of correction, suspended with probation until September 3, 2021 concurrent with the charge of negligent operation of a motor vehicle; negligent operation of a motor vehicle – guilty – sentenced to six months in the house of correction, suspended with probation until September 3, 2021; unlicensed operation of a motor vehicle – guilty - $500.00 file; carrying a dangerous weapon – not guilty;  providing false information to law enforcement – *nolle prossed*;; failing to stop for a police officer – guilty - $100.00 fine; marked lane violation – responsible filed; unregistered vehicle – not responsible; passing lane violation – responsible, filed.  (Exhibit 2 – Certified docket from the Lowell District Court in the case of <u>Commonwealth of Massachusetts v. Leon J. Campbell</u>, Lowell District Court Docket No. 1911CR000365.)

Mr. Bey represented himself in the criminal trial and testified under oath.  (Exhibit 3 –

Transcript of the jury trial in the case of Commonwealth of Massachusetts v. Leon J. Campbell, Lowell District Court Docket No. 1911CR000365.)

A review of the docket of the Massachusetts Appeals Court indicates no appeal has been filed.

### III. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment if the moving party shows, based on the material in the record, "that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." F.R.C.P. 56.

A factual dispute precludes summary judgment if it is both genuine and material See Anderson v. Liberty Lobby, Inc., 477 U.S. 232, 247-48, 106 Sup.Ct. 2505 (1986). Once the moving party shows the absence of any disputed material fact, the burden shifts to the non-moving party to place at least one material fact into dispute. Mendes v. Medtronic, Inc., 18 F.3d 14, 15 (1st Cir. 1994). When ruling on a motion for summary judgment the court must view the facts in the light most favorable to the non-moving party drawing all reasonable inferences in that party's favor. Scanlon v. Dep't of Army, 277 F.3d 598, 600 (1st Cir. 2002).

### IV. ARGUMENT

**1.    The claims are precluded by Heck v. Humphrey.**

A Judgment as a Matter of Law should enter in favor of the defendant on all claims arising out of the incident which resulted in the plaintiff's criminal convictions. Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364 (1994) held that where a § 1983A suit for damages would 'necessarily imply' the invalidity of an inmate's conviction, or 'necessarily imply' the

invalidity of an inmate's sentence such a claim is not cognizable under § 1983 unless or until the inmate obtains favorable resolution of his challenge to his conviction. Thore v. Howe, 466 F.3d 173, 179 (1st Cir. 2006) (quoting Heck, 512 U.S. at 487). White v. Gittens, 121 F. 3d 803, 806 (1st Cir 1997) Although Heck involved an inmate the Heck v. Humphrey doctrine is not limited to incarcerated plaintiffs. Heck ". . . avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant succeeding in the tort action after being convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." DeLeon v. City of Corpus Christi, 488 F.3d 649, 655 (5th Cir. 2007). As explained below, Heck compels entering judgment as a matter of law against Mr. Bey on his claims.

Because Bey's criminal conviction arises from the very same incident underlying his claims of unlawful arrest, assault and battery, due process violation, etc., his claims require negating an element of his conviction thereby triggering Heck preclusion particularly where he alleges no self-culpability despite his convictions. In determining whether Heck precludes a § 1983 claim of excessive police force such as Bey's claims in this case, the reviewing court considers ". . . the relationship between the § 1983 claim and the conviction, including asking whether the plaintiff would prevail only by negat[ing] an element of the offense which he [was] convicted." Thore, 466 F.3d at 179 (quoting Heck, 512 U.S. at 286, n. 6).

When a Court rules that a §1983 claim of excessive force requires negating an element of the plaintiff's criminal conviction, Heck compels entering dispositive relief against the plaintiff. See Havens v. Johnson 783 F.3d 776 at 783-85 (10th Cir) (affirming summary judgment against plaintiff; claim of excessive force required negating an element of conviction for attempted first-degree assault on police officer); DeLeon, 488 F.3d at 656-57 ("There is no alternative pleading

4

or theory of recovery that would allow this claim for excessive force to proceed without interfering with the Texas proceeding against DeLeon for aggravated assault on a police officer;" Statchen v. Palmer, 2009 U.S. Dist. LEXIS 84169, (D.N.H. 2009), *aff'd* 623 F.3d 15 (1st Cir. 2010) ("To the extent that Statchen contends that any force was unreasonable because he was not resisting detention at the market or in his cell, that theory would negate his convictions for resisting detention. As a result, a claim that the defendants used excessive force because he was not resisting would violate the Heck rule and is barred"); Wilkins v. City of Royal Oak, 2005 U.S. Dist. LEXIS 42474, (E.D.Mich. 2005) ([Plaintiff's] §1983 excessive-force claims and her no-contest conviction for assault and battery are 'inextricably intertwined' because they arose out of [Plaintiff's] and Defendants' on-going struggle … [Plaintiff's] §1983 claims would necessarily imply the invalidity of her assault-and-battery conviction [and] … fail as a matter of law [under Heck]) (citing Cummings v. City of Akron, 418 F.3d 676, 682 (6th Cir. 2005)).

A §1983 plaintiff alleging excessive police force is not automatically barred from prosecuting such a claim due to the plaintiff's conviction arising from the incident upon which the §1983 claim is based, even when the conviction arises from a physical encounter with law enforcement. See Havens, 783 F.3d at 782 ("An excessive force claim against an officer is not necessarily inconsistent with a conviction for assaulting the officer … the claim may be that the officer used too much force to respond to the assault or that the officer used force after the need for force had disappeared"). See also Thore, 466 F.3d at 180 ("Even the fact that defendant was convicted of *assault* on a police officer does not, under Heck, as a matter of law *necessarily* bar a §1983 claim of excessive force") (emphasis in original).[1]

---

[1] The First Circuit's use of italics suggests that only in a rare instance will a plaintiff avoid Heck preclusion when, as here, a §1983 plaintiff, convicted of an assault-related offense, alleges excessive police force. See *id*. The First Circuit also noted that "[j]ust as it is true that a §1983

However, Heck precludes a §1983 claim of excessive police force by a plaintiff convicted of a crime arising out of the incident on which the §1983 claim is based when the plaintiff alleges in the civil suit that ***he or she did nothing wrong with respect to the underlying incident;*** (emphasis added) such pleading contradicts the culpability evidenced by the plaintiff's criminal conviction, and necessarily implies the invalidity of the conviction.[2] See Masterson v. Grant 2011 U.S. Dist. Court Virginia Eastern District, LEXIS 6974, where the Court noted that "[u]nder clearly established law, law enforcement officers are entitled to use reasonable force in restraining suspects who are committing assault or resisting arrest." (citing Graham v. Connor, 490 U.S. 386, 396 (1989)). A §1983 plaintiff accordingly cannot commit such criminal offenses prior to suit and later in suit simultaneously allege excessive force and maintain innocence in the underlying incident because, as a matter of law, a police officer is entitled to use reasonable force in restraining such a wrongdoing plaintiff (who should likewise expect that such reasonable force will be used) and the plaintiff's profession of innocence contradicts the criminal conviction. See id. and Havens, 783 F.3d at 783-84.

In *Havens*, where the §1983 plaintiff was convicted via an *Alford* plea of attempted first-degree assault of a police officer, the Tenth Circuit noted that the substance of the plaintiff's complaint alleged no wrongdoing or culpability by the plaintiff, in contravention of his conviction:

---

excessive force claim after an assault conviction is not necessarily barred by Heck, it is also true that it is not necessarily free from Heck." 466 F.3d at 180.

[2] Finality of convictions, including plea agreements, is a long-standing, well-recognized policy. See Olsen v. Correiro, 189 F.3d 52, 69 (1st Cir. 1999) ("Absent a showing that a plea was in some way constitutionally infirm, parties must be held to the terms of the plea so as to ensure society's interest in the integrity of the system of compromise resolution of criminal charges"). A criminal defendant cannot be permitted to obtain the benefit of a plea bargain, then commence a subsequent §1983 suit, alleging excessive police force arising from the very incident giving rise to conviction, when such a claim is grounded upon a profession of innocence contradicted by the conviction.

> Havens' plea [for attempted first-degree assault] is incompatible with his §1983 claim. His complaint did not allege, and his opening brief does not argue, that [Detective] Johnson used excessive force in response to an attempted assault by Havens. Rather, he contends that Johnson's use of force was unreasonable because … he did nothing wrong and did not intend or attempt to injure Johnson. This version of events could not sustain the elements of attempted first-degree assault … and the factual basis for Havens' plea.

Id. at 783. Heck accordingly precluded the §1983 claim of excessive force. Id. at 783-84.

A similar Heck-preclusion result entered in DeLeon, 488 F.3d at 656-57 (5th Cir 2007) where the plaintiff's complaint "… maintains that he [plaintiff] did nothing wrong, that he simply defended himself, against mace, baton, and then gun, as the violence escalated." 488 F.3d at 656. "DeLeon still thinks he's innocent. His federal complaint contradicts his confession in Texas court, belying any suggestion on appeal that he has accepted his conviction for aggravated assault …" Id. at 657. That contradiction compelled Heck preclusion. Id. A similar Heck-preclusion result entered in Stone v. Wall, 2014 U.S. Dist. R.I., LEXIS 182749, and Masterson v. Grant, 2011 United States District Court for the Eastern District of Virginia, Alexandria Section, LEXIS 6974

In this case, the plaintiff was convicted after trial rather than as a result of a plea or admission. The plaintiff claims that he did nothing wrong, and that he was not required to follow the orders of the police to step outside of the car, and that he did not actively resist but was assaulted. He stated at his criminal trial, in his civil complaint and at his deposition that all he did was hold on to the steering wheel while he was hit in the face. All of these claims are incompatible with his conviction.

Bey's pleading also resembles the defective excessive force claim in Havens, 783 F.3d at 783, in that, like the Havens plaintiff, Bey fails to account for or address his criminal wrongdoing in his complaint. "Havens does not present an alternative scenario consistent with

7

his attempted-assault conviction." <u>Havens</u>, at 783-84. Similarly, Bey does not offer or present an alternative scenario consistent with his convictions for resisting arrest. Bey's claim that he was wrongfully pursued or stopped are also inconsistent with his conviction on negligent operation of a motor vehicle.

Indeed, Bey's Complaint does not allege <u>any</u> culpability or wrongdoing on his part, and, like the 1983 claims of excessive force that were jettisoned in <u>Havens</u>, and <u>DeLeon</u>, 488 F.3d at 656-57,³ Bey's claim of excessive police force is linked to his claim of innocence in the underlying incident. Such professed innocence cannot, as a matter of law, comport with Bey's criminal convictions because Bey's civil rights claims must necessarily imply that he did not resist arrest. Indeed, Bey's convictions for resisting arrest show indisputably that as a matter of law, per <u>Masterson</u>, that the defendant officer was entitled to use reasonable force to remove Bey from the car and restrain him.

Here, it is clear that the allegations the *pro se* plaintiff made are completely intertwined with the criminal charges for which he was convicted after a jury trial. Furthermore, the *pro se* plaintiff maintains that he was completely blameless and did nothing. The *pro se* plaintiff's claim must fail because <u>*any amount of force*</u> by the police officer would be a violation.

If the 1983 claim would necessarily imply the invalidity of the plaintiff's conviction or sentence, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. <u>Heck</u> at 486-487. There has been no appeal, or any other action taken by the *pro se* plaintiff with regard to his convictions.

Where Heck arises where a plaintiff has been convicted of a crime or pleaded guilty to a

---

³ *See also Stone*, 2014 U.S. Dist. LEXIS 182749, 19-21; *Masterson*, 2011 U.S. Dist. LEXIS 6974, 12-6.

8

crime stemming from interactions with police officers, the First Circuit and other circuit courts have indicated that Heck serves as a bar to the plaintiff's civil rights claim if the plaintiff maintains in that civil suit that he did nothing wrong and the officers employed excessive force. See Havens v. Johnson, 783 F.3d 776, 783-784 (10th Cir. 2015) (Heck barred § 1983 excessive force claim where plaintiff pleaded guilty to attempted assault of officer and plaintiff maintained he was faultless); DeLeon (Heck barred a § 1983 excessive force claim where plaintiff pleaded guilty to aggravated assault of police officer and plaintiff maintained he was faultless); Thore (Heck barred § 1983 excessive force claim where plaintiff pleaded guilty to assault and battery of police officers with dangerous weapon to extent claim based on plaintiff's theory that he was faultless of any assault). See also Bochart v. Lowell, 2016 WL 696087 at 4-5 (D. Mass. 2016) (Heck barred § 1983 excessive force claim where plaintiff admitted to facts as to assault and battery of officer and resisting arrest to extent claim based on theory that officer attacked plaintiff without justification); Stone v. Wall, 2015 WL 1137544 (D.R.I. 2015).  Heck barred § 1983 retaliatory claim where plaintiff pleaded nolo contendere to assault of officers and denied fighting or resisting officers).

    Wherefore the Plaintiff's federal claims should be dismissed.

    Mr. Bey's state-law claims should also be dismissed. [W]hile the Heck doctrine arose in relation to § 1983 claims, the doctrine is intended to prevent collateral attacks on criminal convictions and is based on "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments. Heck, 512 U.S. at 484-486.

     Massachusetts trial courts have extended the Heck doctrine to state-law tort claims where success on those claims would similarly undermine the validity of criminal convictions.

See Mangual v. Worcester, 285 F. Supp. 3d 465, 472 (D. Mass. 2018) (supporting that Heck applies with equal weight to state-law claims); Cabot v. Lewis, 241 F. Supp. 3d 239, 257-260 (D. Mass. 2017) (finding Heck applicable to state-law tort claims and analyzing effect of Heck on claims for MCRA violation, battery, assault, false imprisonment, false arrest, intentional infliction of emotional distress, and other torts); Lombard v. Salisbury Police Dep't, 1995 WL 1146874 (Mass. Super. 1995) (applying Heck to a Massachusetts Civil Rights Act claim "[g]iven the strong policy against collateral attack of a criminal conviction, the importance of finality in criminal judgments, and the various avenues which remain open to a plaintiff who seeks a new trial or reversal or expungement of his criminal conviction"). But see Turkowitz v. Provincetown, 914 F. Supp. 2d 62, 74-75 (D. Mass. 2012) (Heck does not bar state-law tort claims).

For the reasons stated above, the defendant respectfully requests that the state claims be dismissed based on the Heck v. Humphrey preclusion.

### 2. Officer Pender is Entitled to Qualified Immunity

Qualified immunity dictates "that 'government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991), quoting Harlow v. Fitzgerald, 457 U.S. 800, 812 (1982). "'[U]nder the Harlow standard ... an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner.'" Watkins, 942 F.2d at 72, quoting Malley v. Briggs, 475 U.S. 335, 341 (1986). Further, the qualified immunity inquiry ... allows as well for the inevitable

reality that "law enforcement officials will in some cases reasonably but mistakenly conclude that [their conduct] is [constitutional], and ... that ... those officials like other officials who act in ways they reasonably believe to be lawful should not be held personally liable. Hegarty v. Somerset County, 53 F.3d 1367, 1373 (1st Cir. 1995), quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987). Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. Pearson v. Callahan, 555 U.S. 223, 231 (2009), quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting).

     The qualified immunity inquiry is a two-part test, where a court must decide, (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right and (2) if so, whether the right was "clearly established" at the time of the defendant's alleged violation. Maldonado v. Fontanes, 568 F.3d 263 (1st Cir. 2009), citing Pearson v. Callahan, 555 U.S. 223, 223-224 (2009). The second prong of the test contains dual aspects.

     One aspect of the analysis focuses on the clarity of the law at the time of the alleged civil rights violation. To overcome qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. Maldonado, 568 F.3d at 269, citing Anderson, 483 U.S. at 640.The other aspect focuses more concretely on the facts of the particular case and

11

whether a reasonable defendant would have understood that his conduct violated the plaintiff's constitutional rights. Id.  Additionally, [c]ognizant of both the contours of the alleged infringed right and the particular facts of the case, "the relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." ... the salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional. Id., citing Brosseau v. Haugen, 543 U.S. 194, 198 (2004).  "These two prongs of the analysis need not be considered in any particular order, and both prongs must be satisfied for a plaintiff to overcome a qualified immunity defense." Raiche v. Pietroski, 623 F.3d 30, 35 (1st Cir. 2010).

      Here, Officer Pender's actions passed the two-prong test.  The defendant officer utilized force in defense of the attack by the *pro se* plaintiff.  *Pro se* plaintiff was ordered to exit the vehicle, he resisted removal from the vehicle and when he did, he engaged in assaultive conduct against the police officer by knocking the taser out of his hands.  The *pro se* plaintiff was clearly resisting and actively assaultive and the facts do not indicate excessive force nor would an objectively reasonable police officer believe he was violating the *pro se* plaintiff's civil rights and a reasonably objective officer would not know he was violating civil rights.

      Wherefore, the defendant respectfully moves the Court to dismiss the Complaint.

      **3.**      **The Plaintiff's Claims are Precluded by Judicial Estoppel**

      Judicial estoppel,  which applies equally to civil and criminal proceedings,

(see Commonwealth v. Prophete, 443 Mass. 548, 555 n.10, 823 N.E.2d 343 (2005), "is an equitable doctrine that precludes a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding." Otis v. Arbella Mut. Ins. Co., 443 Mass. 634, 639-640, 824 N.E.2d 23 (2005), quoting from *Blanchette v. School Comm. of Westwood*, 427 Mass. 176, 184, 692 N.E.2d 21 (1998). The doctrine is particularly applicable to cases, such as the one here, where permitting a subsequent proceeding to go forward would produce "inconsistent determinations . . . endangering the integrity of the judicial process." Otis at 643, quoting from Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004). The plaintiff was convicted of resisting arrest arising out of the same transaction and upon the same person against whom he is now suing. He was convicted of crimes which are arrestable offenses and thus he cannot maintain a suit for false arrest or other civil claims arising from proper police actions which were confirmed by the conviction.

Wherefore the defendant respectfully moves that the complaint be dismissed.

**4.      There is No Plausible Cause of Action for Violation of the Massachusetts Declaration of Rights**

There is no private right of action under the Massachusetts Declaration of Rights. The plaintiff instead must allege a violation of something else such as § 1983 or the Massachusetts Civil Rights Act because it is generally accepted that the Massachusetts Civil Rights Act "occupies the field" under most circumstances.  Martino v. Hogan, 37 Mass. App. Ct. 710, 643 N.E. 2d 53 (1994).  The Supreme Judicial Court has never held that there is a right of action to enforce the Declaration of Rights.  Martino at 720.  The SJC has stated that a person whose civil rights had been interfered with may be entitled to judicial review even in the absence of a statute providing a procedural vehicle for obtaining relief, Phillips v. Youth Development Program, Inc., 390 Mass. 652 (1983).  The SJC observed without explicitly deciding that the

13

absence of a statutory remedy for the violation of Constitutional rights cannot absolutely and in all cases bar judicial protection of those rights, Carlson v. Green, 446 U.S. 14 (1980). Phillips, 390 Mass. 658, n.4.  Here, however the *pro se* plaintiff had alternative statutory remedies such as the Massachusetts Civil Rights Act or § 1983.  This court has also so held. Cryer v. Spencer, 934 F. Supp. 2d 323 (D. Mass. 2013); Orell v. UMass Memorial Medical Center, Inc., 203 F. Supp 2d 52, 71 (D. Mass. 2002).

Lastly, *pro se* plaintiff alleges Genocide.(18 U.S.C. §1091 (a)  ("Whoever, with the specific intent to destroy… a national ethnic, racial or religious group….)  The Complaint sets forth no facts or any allegations to support a plausible claim that the defendant in this motor vehicle stop in Lowell committed or attempted to commit genocide.  To survive review, the Complaint must state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  Therefore, the claim of genocide must be dismissed.

## V.      CONCLUSION

For all the above reasons, the defendant respectfully requests that the Court dismiss the Complaint.

                                                                The Defendant,

                                                                DAVID PENDER,

                                                                By his attorney,

                                                                /s/*Bradford N. Louison*
                                                                _____
                                                                Bradford N. Louison, Esq. BBO#305755
                                                                blouison@lccplaw.com
                                                                Louison, Costello, Condon & Pfaff, LLP
                                                                101 Summer Street
                                                                Boston, MA 02110
                                                                (617) 439-0305

Date:   August 27, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I caused the foregoing to be served by first class mail to:

Leonitus Jabir Bey
P.O. Box 1934
Lowell, Mass 01854

/s/*Bradford N. Louison*

Bradford N. Louison

Dated:  August 27, 2020